STATE OF NEBRASKA, APPELLEE, v. ALAN V. HARDIN, APPELLANT.

326 N.W.2d 38

Filed November 5, 1982. No. 44395.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Mel Kammerlohr, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ.

PER CURIAM.

The defendant Hardin was charged with having, on November 1, 1980, purposely and with deliberate and premeditated malice, killed Ruby O. Smith Hardin, his estranged wife. The jury found him guilty of murder in the second degree and the court sentenced him to life imprisonment. On appeal to this court he makes the following claims of error: (1) The District Court erred in denying defendant's motion for mistrial, which motion was founded upon the claim that the State failed, in violation of an earlier order of discovery, to disclose to the defendant statements allegedly made by the defendant to third persons. (2) The court erred in failing to instruct the jury that it might find the defendant guilty of the lesser-included offense of manslaughter. We affirm.

We will discuss the assignments in the reverse order of their listing. The prosecution introduced evidence which would permit the jury to find the following facts. Hardin and his wife were separated and their divorce was pending. The parties' house was located in the 3900 block on Burdette Street in Omaha. At about 1 a.m. on November 1, the defendant deliberately drove his automobile across the lawn of the residence and through the side of the house, into the bedroom where his wife and her 6-year-old daughter were sleeping. The car penetrated the bedroom about two-thirds of the car's length. Ruby was not injured by the collision, al-

though the daughter was. Both fled from the bedroom into other parts of the house. The crash awakened Ruby's 8-year-old son who was sleeping in another part of the house. Hardin crawled out of the car and entered the house. He was armed with a .25-caliber handgun. Ruby's son and daughter witnessed Hardin shoot their mother four times with the gun. Neither child heard any conversation, discussion, or argument between Ruby and Hardin. Ruby died of the gunshot wounds. Two witnesses testified to a confession the defendant made before his apprehension. The general import of the confession was that after the car entered the bedroom, the defendant observed his wife still alive and fleeing. He then got out of the car, pursued, and shot her.

As the basis for the claim that an instruction on the lesser charge of manslaughter should have been given, defendant makes the following recital in his brief: "There is strong evidence that just prior to the homicide, the defendant was under extreme emotional stress. He and his wife had a stormy relation, were in divorce proceedings and he had moved out of the house. On a prior occasion shortly before the crime, he discovered his wife in bed with a knife under her leg and he took a pistol from the dresser drawer for protection. There was testimony that about two weeks before the commission of the crime, the defendant and his wife had an argument about her alleged infidelity and on the night the incident occurred, a friend of the defendant told him that his wife had sold the TV that he had bought for his stepson so that she could buy concert tickets for her and her boyfriend. Immediately prior to the killing, the defendant had gone to his home to pick up his clothes and as he approached, he noticed a car at the house and observed his wife get out and being kissed goodnight by a male companion. There was testimony that his mind 'snapped' and he waited for the man to leave and drove his car into

the side of the house. There is also testimony that he attempted to kill himself immediately after he shot his wife.

"Further, psychiatric testimony established that the defendant had an explosive personality and could not control his emotions under stress and that he had a personality or character disorder in this regard. The defendant was not the type of person to plan ahead and was incapable of premeditation under stress, exploding impulsively instead. One psychiatrist testified that a sudden explosive reaction is fairly typical for the defendant's kind of personality and that the defendant was acting under 'extreme emotional pressure' at the time of the killing." To the above should be added that both of the expert witnesses (a psychologist and a psychiatrist) who testified on the defendant's behalf gave the opinion that the defendant was not insane, that he had a personality or character defect which they classified as "histrionic."

The brief asserts: "Counsel believes that the jury could find that the killing of Mrs. Hardin resulted from a sudden quarrel . . . ." Although not set forth in his recital of the alleged facts, the record shows that the defendant told the expert witnesses who testified on his behalf that immediately before the shooting he and his wife quarreled.

All of the alleged facts upon which the defendant relies, viz, that he had gone to his home to pick up his clothes, that he saw his wife kissing a man, that he waited for the man to leave, that he attempted to kill himself, and that there was a sudden quarrel, were not testified to by any witness observing those alleged facts, but came in as part of the recitals made by Hardin to the expert witnesses during their conversations with him after the event. Hardin did not take the stand in his own behalf.

The following principles govern the question of whether the trial court, in a prosecution for murder,

is required to give an instruction permitting the jury to consider guilt on the lesser-included offense of manslaughter. A person commits murder in the second degree if he causes the death of a person intentionally, but without premeditation. Neb. Rev. Stat. § 28-304 (Reissue 1979); *State v. Rowe,* 210 Neb. 419, 315 N.W.2d 250 (1982). A person commits manslaughter if he kills another without malice, either upon a sudden quarrel, or causes the death of another unintentionally while in the commission of an unlawful act. Neb. Rev. Stat. § 28-305 (Reissue 1979); *State v. Rowe, supra; State v. Beers,* 201 Neb. 714, 271 N.W.2d 842 (1978). Where murder is charged, the court is required, without request, to charge on such lesser degrees of homicide as to which the evidence is properly applicable. In order for this rule to require an instruction on manslaughter, the record must contain some evidence which would tend to show that the crime was manslaughter rather than murder. *State v. Rowe, supra; State v. Beers, supra.* Malice denotes that condition of mind which is manifested by the intentional doing of a wrongful act without just cause or excuse. *State v. Beers, supra.* Where the evidence shows without dispute that one charged with murder purposely pointed a loaded gun at another and pulled the trigger and there is no evidence of a sudden quarrel or other condition which might permit a finding that there was an absence of malice, then the court is not required to give an instruction which would permit the jury to render a verdict of manslaughter. *State v. Beers, supra.*

The driving of the automobile into the bedroom of the house was clearly an illegal act. If Hardin did that act with the intention of killing his wife and it had that result, the act would have constituted murder in either the first or second degree. If he had no such intention but had killed his wife, then manslaughter would have been a proper charge. However, in this

case Ruby's death was not the result of the illegal act. The evidence indicates that she was the victim of an intentional shooting. In these circumstances an instruction on the lesser-included offense of manslaughter based upon an illegal act is not required. *State v. Beers, supra.*

We must take note of another aspect of the problem which neither the defendant nor the State discusses with specificity. Paradoxically, although the defendant, in supporting his right to a manslaughter instruction, relies upon his out-of-court recitals to the psychiatrist and the psychologist about his purpose in going to the house at 1 o'clock in the morning and his observation of his wife kissing a man good night, he does not specifically rely upon the other portions of his narration to the experts in which he told them a quarrel had occurred between himself and his wife just before the shooting.

It is clear from the record that the court, in ruling on the motion for an instruction on manslaughter, regarded all of the recitals as incompetent evidence of the substantive truth of what occurred and what the defendant did, and viewed them only as foundational evidence for the experts' opinions on their diagnosis of the defendant's state of mind. This situation raises a question which has been on the periphery of at least one earlier case, *State v. Rowe, supra,* and that is the effect of Neb. Rev. Stat. § 27-803(3) (Reissue 1979) insofar as it relates to psychiatric testimony. Should the psychiatrist be permitted to testify as to all the defendant told him about the events in question, thus permitting the defendant's cause to come before the jury without subjecting the defendant to the risks of cross-examination?

Section 27-803, insofar as pertinent, provides: "Subject to the provisions of section 27-403, the following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . .

(3) Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

In this case, is the defendant's recital to the experts substantive evidence that a quarrel occurred, or is the out-of-court statement available only as "pertinent" to the diagnosis and not for its substantive truth? As has been pointed out in 4 Louiselle and Mueller, Federal Evidence § 444, special problems arise in the application of that statute in the context of statements made to a psychiatrist. It seems to us these special problems arise because of the broad scope which is accorded foundational material for psychiatric opinion. Many prosecutors and defense counsel seem to assume that everything an accused, whose defense is insanity or some special state of mind lessening culpability, tells the physician about the "facts" is admissible under § 27-803(3). The rule permitting statements concerning "inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment," § 27-803(3), "is bottomed on the notion that a person seeking medical attention will give a truthful account of the history and current status of his condition in order to ensure proper treatment." *State of Howard,* 405 A.2d 206, 209 (Me. 1979). The cited opinion refers to Advisory Committee Note, Fed. R. Evid. 803(4) (1982). Nothing in experience or logic suggests there is a circumstantial guarantee of trustworthiness in the exculpatory extrajudicial statements of a person accused of crime relating to what he did or what occurred, even when such statements are made to a psychiatrist or psychologist. Therefore, such statements, while they may sometimes be admissible for purposes of diagnosis (and we do not

here attempt to define the exact limits), ought not to be used as substantive evidence of the truth of what the defendant did or what occurred. The Court of Appeals, Eighth Circuit, has discussed Fed. R. Evid. 703(4) (1982) (§ 27-803(3) in our evidence code) in a somewhat different context in the case of *Aetna Life Ins. Co. v. Quinley,* 87 F.2d 732 (8th Cir. 1937), and pointed out that the statute was not intended to provide a license to employ the services of an expert witness for the purpose of obtaining his summary of out-of-court statements made to him. That case, however, was in a civil action where the other side could call the adverse party for cross-examination. The reasons, of course, which the court advances in the above case apply a fortiori in a criminal case where the accused cannot be called for cross-examination by the prosecution.

We hold that exculpatory statements made by an accused to a psychiatrist for diagnosis of a mental condition of the accused, insofar as they may recite what he did or what occurred in connection with the commission of the alleged crime, are not competent evidence of the truth of the contents of the statement. They are admissible, if at all, only to show "the inception or general character of the cause or external source" of the mental condition and "insofar as reasonably pertinent to diagnosis or treatment" of that mental condition. In civil cases, for example, statements made to a physician which pertain to facts of the accident indicating that the other party was at fault would not be pertinent to diagnosis or treatment. *Brown v. Seaboard Airline Railroad Company,* 434 F.2d 1101 (5th Cir. 1970).

Prosecutors are remiss when they do not either object or secure an ad limine ruling concerning the use of the accused's statements which are not pertinent to diagnosis or treatment. In this case no objection was made nor ad limine ruling procured. However, it is clear that the court admitted the tes-

timony and considered it only for the limited purposes we have been discussing. Evidence which is competent only for one purpose may not be considered for other purposes. *Baxter v. National Mtg. Loan Co.,* 128 Neb. 537, 259 N.W. 630 (1935).

There was no competent evidence in the record from which the jury could conclude that the homicide resulted from a sudden quarrel, and the court did not err in refusing the request for an instruction permitting a finding of manslaughter because the killing was upon a sudden quarrel.

The defendant's contention that the trial court committed reversible error in not declaring a mistrial arises from an occurrence after the second day of trial. The two witnesses to whom the defendant made the confession earlier described had been interviewed by both the prosecution and the defense. Both the prosecutor and defense counsel apparently were aware of the confession, and the defense would, it seems, have already concluded that the testimony of the two witnesses would be used. However, a week or two before trial the prosecutor interviewed the witnesses again and for the first time learned that on some occasion before the killing the defendant had told the two witnesses, apparently in the presence of one or two other people, that Ruby was insisting that title to their house be placed in her name. Hardin and Ruby had quarreled over this. The defendant, in mentioning the matter to the witnesses, had said, in the words of the witnesses, that he would fix the old gal and that he would drive Beular (the defendant's car apparently had a name) through her house if she wanted the house in her name so bad.

After the second day of trial, the prosecutor learned the name of the third party who was present at the above conversation. The prosecutor thereupon called the defense counsel and told him that he was going to ask to endorse on the information the

name of that person as a witness. The next morning defense counsel moved for a mistrial because the prosecutor had not earlier disclosed to him the conversation about Beular. The trial court denied the motion for a mistrial but granted a continuance which allowed defense counsel to take depositions and interview the proposed witness. That was done. The prosecution did not call that witness.

Defendant's counsel claims prejudice because he had, in his opening statement, told the jury that his client would testify in his own defense. He states that he would not have told the jury that if he had had the information about the Beular conversation.

Even if we assume that the discovery order required the disclosure of the Beular conversation, we fail to see that the nondisclosure harmed the defendant. The witness whose identity was learned on the second day of trial was not called as a witness. The statement itself was not a threat to do harm to the victim. It was a threat to damage the home. Even if the information had been disclosed, it ought not reasonably have affected defendant's decision whether to testify or not, or counsel's judgment as to what he would say in his opening statement about the defendant testifying. The defendant and his counsel knew that the confession would be offered and probably received in evidence. That awareness would clearly control the tactical choice as to whether defendant would take the stand to deny the confession and what counsel would say in the opening statement about his client testifying.

The defendant received all the relief to which he was entitled in connection with his motion for mistrial when the continuance was granted and he was given the opportunity to interview witnesses and take depositions. *State v. Rhodes,* 191 Neb. 131, 214 N.W.2d 259 (1974).

AFFIRMED.

KRIVOSHA, C.J., concurs in the result.

CLINTON, J., participating on briefs.