STATE OF NEBRASKA, APPELLEE, v. EDWARD E. LEE, APPELLANT.

341 N.W.2d 600

Filed December 23, 1983.   Nos. 83-118, 83-119.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Mark D. Starr, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

The appellant, Edward E. Lee, was charged and convicted of first degree murder by a jury, in violation of Neb. Rev. Stat. § 28-303 (Reissue 1979), a Class I felony, and of being a felon in possession of a firearm in violation of Neb. Rev. Stat. § 28-1206 (Reissue 1979), a Class IV felony. We have examined the record, and although Lee's counsel makes an effective argument to this court, we believe that the assignments of error do not justify a reversal in this case. We therefore affirm both the convictions and the sentences.

The evidence discloses that in the early morning hours of Saturday, August 7, 1982, Lee was a passenger in an automobile being driven by Bonnie Welker. As they approached the intersection of 84th and L Streets in Omaha, Nebraska, they were met by another vehicle driven by Gregory Powell, in which the victim, Wilbert Swick, the owner of the vehicle, was a passenger. Welker testified that she had noticed the two males in the accompanying automobile yelling at her, although she was not able to understand what they were saying. She further testified in substance that the driver of the other car "came over in her lane" and, when she looked over at the automobile, the passenger blew her a kiss. This apparently irritated Lee. Both cars then arrived at the intersection of 84th and L Streets, where Welker negotiated her automobile into the right-hand turn lane, and she was about halfway into the turn when Lee made her stop the car by threatening to jump out. When Welker stopped the vehicle, Lee left the ve-

hicle and went over to the Swick automobile. According to Powell, he saw Lee get out of the car and walk over to their car. Powell then heard Lee say, "Don't be flirting with my girl." Lee then exhibited a gun, swung it around, and fired a shot. After Lee left the vehicle and returned to the Welker automobile, Swick said, "Oh, my God, I have been shot, get me to a hospital." Powell rushed Swick to the Midlands Hospital, where he later died from the wounds.

According to Welker, when Lee returned to the Welker car he said, "I shot the gun." He further said, "I had the gun up to his head. I didn't even know I had the gun in my hand until it was up against his head. I was bringing it down when it went off." Welker further testified that Lee said he did not even remember pulling the trigger. Welker was permitted to testify that Lee was pretty upset and said he did not know why it had happened and that he did not know why God had picked on him for that to happen to. Both Welker and Lee drove around Omaha until approximately 6:30 a.m.

Lee was later arrested and charged with the crimes which resulted in his convictions. He was sentenced to life imprisonment on the charge of murder and to a term of 20 months' to 5 years' imprisonment on the charge of possession of a firearm by a felon. He now maintains that the convictions must be set aside because (1) it was error for the trial court to admit testimony concerning his sale or attempted sale of marijuana and (2) it was error to refuse to grant Lee a mistrial upon defense motion.

First, as to the assignment concerning the sale or attempted sale of marijuana, the record discloses that during the examination of Bonnie Welker, she testified that she and Lee had left Kansas City for Omaha about 11 a.m. on the morning of August 6, 1982. She testified that they were drinking in the car and were also smoking "pot." During her direct examination concerning this trip, the following exchange occurred between her and the prosecutor:

"Q. When you drove back that day, were you guys doing any drinking on the way back? A. Yes, we were. Q. What were you drinking? A. We had a 12-pack of beer. Q. When you drove back from Kansas City that day, were you doing any drugs of any kind? A. Yes. Q. What? A. We were smoking pot. Q. Smoking pot? A. Yes. Q. All three of you? A. Yes. Q. Where had the pot come from? A. It was Stephanie's. Q. This girl that you mentioned earlier? A. Yes. Q. She wasn't with you, was she? A. No. Q. How did you end up with it? A. Because Ed [Lee] said if he had a bunch of pot, he could make some money. She took it down there to him. Q. Originally on Wednesday when he went down? MR. CORRIGAN [defense counsel]: Your Honor, I am going to object." Following the objection, the court ordered a short recess and heard argument of counsel in chambers.

Lee's counsel moved for a mistrial on the ground that the prosecution had introduced evidence of other crimes, i.e., the selling of drugs, which was inadmissible. The court refused to grant the mistrial but did offer to instruct the jury to disregard the evidence. Defense counsel objected to that suggestion and, therefore, no instruction was given. It is the denial of the motion for mistrial which Lee contends was error.

Ordinarily, when a motion to strike inadmissible evidence is sustained and the jury is instructed to disregard it, such action by the court is deemed sufficient to prevent prejudice, and therefore the defendant is not entitled to a mistrial. See *State v. Ebberson*, 209 Neb. 41, 305 N.W.2d 904 (1981). As an example, in *State v. Kirby*, 185 Neb. 240, 175 N.W.2d 87 (1970), a witness was asked how long he had known the defendant. He replied, " 'I have met him a couple times. When he is—before he went to prison . . . .' " *Id.* at 253, 175 N.W.2d at 95. Defense counsel moved for a mistrial, which was overruled. On appeal to this court we affirmed the action of the

trial court in denying the motion for a mistrial, saying at 253, 175 N.W.2d at 95-96: "The answer was unexpected, and the court immediately instructed the jury to disregard it. It is a rule in this jurisdiction that if an objection or motion to strike is made and the jury is admonished to disregard it, the alleged tainted evidence is not error."

In the instant case defense counsel did not move to strike the testimony, although he did object to the question after the answer had been given. He also refused to permit the trial court to admonish the jury to disregard the testimony. It would appear to us that if, by properly objecting or moving to strike and requesting the trial court to instruct the jury, the error is cured and precludes a defendant from obtaining a new trial, then failing to move to strike and refusing to permit the trial court to admonish the jury must likewise preclude a defendant from being entitled to a new trial.

Furthermore, even if inadmissible evidence finds its way to the jury, the defendant is not generally entitled to a new trial unless the evidence improperly admitted results in a substantial miscarriage of justice. Neb. Rev. Stat. § 29-2308 (Cum. Supp. 1982) provides in pertinent part: "No judgment shall be set aside, or new trial granted, or judgment rendered in any criminal case, on the grounds of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, if the Supreme Court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred." See, also, *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); *State v. Van Ackeren*, 194 Neb. 650, 235 N.W.2d 210 (1975).

Not every error entitles a defendant to a reversal of his conviction. For example, in *State v. Russ*, 191 Neb. 300, 214 N.W.2d 924 (1974), the jury, during its deliberations, accidentally discovered that the de-

fendant was on parole at the time he allegedly committed the crime in question. The trial court denied defendant's motion for mistrial, and on appeal we affirmed, saying at 302, 214 N.W.2d at 925: "Error in the admission of evidence is not grounds for reversal if no substantial miscarriage of justice occurred. [Citation omitted.] The evidence of guilt in this case is conclusive. Under these circumstances we conclude no substantial miscarriage of justice occurred." See, also, *State v. Dittrich*, 191 Neb. 475, 215 N.W.2d 637 (1974); *State v. Irwin*, 191 Neb. 169, 214 N.W.2d 595 (1974).

The evidence in this case was simply overwhelming that Lee fired the weapon which resulted in Swick's death and that he was a felon in possession of a weapon. The only defense raised by Lee was that the evidence was insufficient to prove premeditation and that, therefore, the crime committed was not murder in the first degree but murder in the second degree. We do not believe the statement by Lee's companion, to the effect that someone brought Lee "pot" because Lee thought he could make some money, under the evidence in this case, was sufficient to entitle Lee to a new trial under the circumstances in this case.

If the evidence presented established that the State had knowingly and deliberately adduced inadmissible evidence, the harmless error rule might not apply. See, *State v. Atwater*, 193 Neb. 563, 228 N.W.2d 274 (1975); *State v. Brooks*, 189 Neb. 592, 204 N.W.2d 86 (1973); *State v. Franklin*, 194 Neb. 630, 234 N.W.2d 610 (1975). In the present case, however, there is no indication that the State deliberately and intentionally sought to introduce to the jury evidence that Lee was engaged in the sale of illegal drugs. Furthermore, defendant, without objection, permitted the introduction of evidence to the effect that the parties were, at a minimum, violating the law by both drinking on a public highway and smoking "pot." Neb. Rev. Stat. §§ 53-186 (Reissue 1978) and

28-416 (Cum. Supp. 1982). Defendant argues that those crimes were minor in comparison to the crime of selling marijuana, and therefore the testimony regarding the sale should be viewed in a different light. We find no basis in the record, however, to assume this to be true. As a matter of fact, one might conclude from examining the record that in fact defense counsel wanted the jury to believe that Lee had been smoking pot and drinking to excess so that it might believe that Lee could not have the requisite intent to commit murder in the first degree. To therefore suggest that some of the evidence was admissible, or at least harmless, and the balance inadmissible and harmful is an attempt to draw a line too fine. Where the statement here is so minor as compared to either the crime charged or the other evidence introduced, we can say that a substantial miscarriage of justice did not occur.

Lee's second assignment of error concerns the trial court's refusal to permit Welker to testify concerning certain allegedly exculpatory statements made by Lee following the incident. The trial court did permit Welker to testify concerning statements made by Lee during the first 10 minutes following the incident. Lee sought to introduce other allegedly exculpatory statements made by him to Welker during the remaining 4 hours while they drove around Omaha. These statements, the trial court concluded, were too remote in time and did not fall into the "excited utterance exception" to the hearsay rule. We believe the trial court was correct.

Neb. Rev. Stat. § 27-803(1) (Reissue 1979) does indeed exclude from the hearsay rule statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." To qualify as an excited utterance the following conditions must exist: "(1) There must have been a startling event. [Citation omitted.] (2) The statement must relate to the event. [Citation omitted.] (3) The statement

must have been made by the declarant while under the stress of the exciting event. [Citations omitted.]" *State v. Reed*, 201 Neb. 800, 806, 272 N.W.2d 759, 762 (1978). A determination as to the admissibility of the statement generally rests within the sound discretion of the trial court. See, *State v. Juarez*, 187 Neb. 354, 190 N.W.2d 858 (1971); *State v. Brown*, 190 Neb. 96, 206 N.W.2d 331 (1973). Our review of the entire record leads us to the conclusion that one cannot say that the trial court abused its discretion when it determined that after 10 minutes all further statements were outside of the excited utterance rule.

Moreover, it appears that the statements which were excluded were simply more of the same type of statements which were permitted and would therefore, at best, have been cumulative in nature. The refusal by the trial court to permit the introduction of cumulative evidence is not error and does not entitle a defendant to a new trial, absent a showing of an abuse of discretion. *State v. Newman*, 179 Neb. 746, 140 N.W.2d 406 (1966); *Edmonds v. State*, 163 Neb. 323, 79 N.W.2d 453 (1956). We believe the evidence fails to show any abuse of discretion.

Having therefore concluded that there was no error committed by the trial court, we affirm both the convictions and the sentences.

AFFIRMED.