STATE OF NEBRASKA, APPELLEE, V. JANE M.
ARCHBOLD, APPELLANT.

350 N.W.2d 500

Filed May 11, 1984.   No. 83-394.

Steven Lefler of Schrempp, Lefler, Hoagland & Gray, for appellant.

Paul L. Douglas, Attorney General, and Terry R. Schaaf, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Jane M. Archbold appeals her conviction and sentence for manslaughter. Archbold complains that the trial court should not have given an unrequested instruction regarding manslaughter when the crime alleged in the information was second degree murder. As an additional complaint, Archbold claims a mistrial should have been declared as a result of evidence adduced on Archbold's cross-examination. We affirm.

About 7 p.m. on November 19, 1982, Jane Archbold, 19 years old, took her 2-year-old son to the home of her sister, Kathy Archbold, for babysitting. At approximately 10 p.m. a group unexpectedly visited Kathy's home, and a party developed. During the party, Kathy got into an argument with her boyfriend, Gregory (Greg) Middleton. Jane arrived at midnight, while Kathy and Middleton were arguing. Shortly after Jane's arrival, Kathy went into the kitchen of her house and returned to the front room brandishing a kitchen knife. Kathy asked Middleton to leave and threatened him with the knife. While quieting Kathy, Jane took the kitchen knife from Kathy and put it in her belt or sash. Jane remained at Kathy's house until 1 or 1:30 a.m. (November 20), when Kathy and Jane decided to take their children to Sue Waugh's house across the street.

At Sue Waugh's house Kathy and Jane visited around 1½ hours, when one of the male party-people from Kathy's house came across the street and talked to Jane. Because that man was "loaded," Jane walked him back across the street. About this time, Middleton came to Waugh's house and demanded to see Kathy, who was inside. When Kathy did not appear, Middleton broke a window and ripped the screen door of Waugh's house.

Waugh, carrying a baseball bat, came out the back door of her house and encountered Middleton at the side of the house. At this point Jane was returning to Waugh's house and saw Waugh and Middleton meet alongside the house. Waugh swung the baseball bat at Middleton, but missed. Middleton then tackled Waugh and grabbed the ball bat. As Jane came near the scene, Waugh broke away from Middleton, and Middleton threw the ball bat against the side of the house. The ball bat caromed off the house and struck Jane's head.

Middleton apologized to Jane for causing the ball bat to strike her. As Middleton and Jane walked from the scene of the Waugh-Middleton scuffle, Middleton continued to apologize for and Jane harangued about the "bat incident." After a 2-minute walk and argument, interspersed with profanities from Jane, Middleton and Jane reached the street in front of Waugh's house.

As observed by the party-people at Kathy's house, Kathy approached Middleton and Jane in the street. Kathy asked Middleton to leave. In the course of this meeting involving Kathy, Middleton, and Jane, Middleton—apparently realizing that Jane still carried the knife—said to Jane, "What are you going to do, stab me?" As Middleton began to move toward Kathy, Jane raised the kitchen knife and stabbed Middleton in his upper left chest. The knife severed Middleton's pulmonary artery and produced hemorrhage which caused his death.

An information was filed charging Archbold with second degree murder of Gregory Middleton (Neb. Rev. Stat. § 28-304(1) (Reissue 1979)), and the case was tried before a jury.

In her cross-examination Archbold testified:

Q. There is no accident about this stabbing, is there, Miss Archbold? You are not telling the jury that in any way your taking that knife and stabbing him in the chest was an accident, you did it intentionally, didn't you? A. No. Q. You

348

didn't do it intentionally? A. It was a reflex. Q. I'm sorry? A. It was a reflex. Q. A reflex. I mean, is this reflexive action that happened that night, I mean is it something you have done before? A. What do you mean? Q. Stab somebody before? A. No. Q. You never have? Out in California? A. Yes.

After the foregoing interrogation the prosecutor questioned Archbold about other aspects of Middleton's homicide and never cross-examined Archbold further about the stabbing in California. Shortly after Archbold's redirect examination was commenced, Archbold's counsel interrupted his questioning and approached the bench. The court excused the jury, and outside the jury's presence Archbold's counsel moved for a mistrial due to the cross-examination about the California stabbing. The court and Archbold's counsel agreed that such questioning by the prosecutor was not in bad faith. The California stabbing had been unknown to Archbold's attorney until elicited on Archbold's cross-examination. Archbold's attorney then explained his reason for the delayed motion for mistrial, that is, the attorney's belief that a motion for mistrial during Archbold's cross-examination would have called "undue attention to that aspect of the case." The court overruled the motion for mistrial. Archbold's counsel then objected to the prosecutor's question regarding the California stabbing, moved to strike Archbold's testimony about such stabbing as irrelevant, and requested that the court admonish the jury to disregard Archbold's testimony about the stabbing in California. The objection and the motion to strike were overruled, and the jury was not admonished to disregard Archbold's testimony about the California stabbing. Upon resumption of redirect examination Archbold testified in detail concerning the California stabbing.

During the conference on instructions, Archbold's counsel objected to any instruction on the crime of

manslaughter. Without any request to do so, the court gave an instruction on the elements of manslaughter, and also gave an unrequested instruction which in substance informed the jury that the California incident could be considered only for the limited purpose of determining whether Archbold had the requisite criminal intent as proof for second degree murder. There was no objection to the instruction regarding testimony about the California incident.

The jury's verdict was "guilty of manslaughter." After a presentence report, the court sentenced Archbold to a period of 5 to 10 years in the Nebraska Center for Women at York, Nebraska.

Archbold does not claim that the instruction on manslaughter contained any incorrect statement of law. As assignments of error, Archbold contends: (1) The trial court should not have instructed on the crime of manslaughter and should not have submitted such issue to the jury; (2) A mistrial should have been declared; and (3) The sentence is excessive.

There was evidence of a disagreement between Jane and Middleton as a result of the "bat incident." The circumstances surrounding the bat incident and argument resulted in a question for the jury whether Middleton's death occurred "upon a sudden quarrel" involving Archbold. Also, Middleton, knowing Archbold was carrying a knife, asked whether she was going to stab him. In her testimony Archbold called her stabbing Middleton a "reflex." "Reflex," in common usage, means an involuntary response, that is, an unintentional act. Consequently, in view of the evidence there was a jury question whether Middleton's homicide might have been unintentional but during the commission of an unlawful act (assault). In short, there was evidence on the elements of manslaughter. See Neb. Rev. Stat. § 28-305(1) (Reissue 1979).

Neb. Rev. Stat. § 29-2027 (Reissue 1979) provides:

"In all trials for murder the jury before whom such trial is had, if they find the prisoner guilty thereof, shall ascertain in their verdict whether it be murder in the first or second degree, or manslaughter . . . ."

Notwithstanding an information charging murder, when evidence can support different and reasonable inferences regarding the degree or grade of criminal homicide, the jury must draw the inference determining the degree of criminal homicide. See, *Moore v. State*, 148 Neb. 747, 29 N.W.2d 366 (1947); *Jackson v. Olson*, 146 Neb. 885, 22 N.W.2d 124 (1946); *Denison v. State*, 117 Neb. 601, 221 N.W. 683 (1928).

In order that there be an instruction on manslaughter as a lesser degree of criminal homicide within the charge of murder, there must be evidence which tends to show that the crime was manslaughter rather than murder. See *State v. Beers*, 201 Neb. 714, 271 N.W.2d 842 (1978).

When a proper, factual basis is present, a court must instruct a jury on the degrees of criminal homicide, that is, the provisions of § 29-2027 are mandatory. See *Bourne v. State*, 116 Neb. 141, 216 N.W. 173 (1927). Where murder is charged, the court is required, even without request, to instruct the jury on the lesser degrees of criminal homicide for which there is proper evidence before the jury. See *State v. Hardin*, 212 Neb. 774, 326 N.W.2d 38 (1982).

In view of the evidence concerning Middleton's death, in compliance with § 29-2027 the court was required to instruct the jury on the crime of manslaughter. Under the circumstances the court had no choice whether to give a manslaughter instruction. The court's submitting the issue of manslaughter was correct.

Archbold next contends there should have been a mistrial due to the prosecutor's questions about the California stabbing.

Although a mistrial is recognized in Nebraska trial practice, it does not appear that we have pre-

viously discussed the function of a mistrial. A mistrial results in nullification of a pending jury trial. In order to prevent defeat of justice or to further justice during a jury trial, a mistrial is generally granted at the occurrence of a fundamental failure preventing a fair trial in the adversarial process. Some examples are an egregiously prejudicial statement by counsel, the improper admission of prejudicial evidence, or the introduction of incompetent matters to the jury, to the extent that any damaging effect cannot be removed by proper admonition or instruction to the jury. See, *Loveland v. Nieters*, 79 N.D. 1, 54 N.W.2d 533 (1952); *Lemberger v. Koehring Co.*, 63 Wis. 2d 210, 216 N.W.2d 542 (1974); *Hoffer v. Burd*, 78 N.D. 278, 49 N.W.2d 282 (1951); *Usborne v. Stephenson*, 36 Or. 328, 58 P. 1103 (1899).

Courts have considerable discretion in passing on the motions for mistrial, to the end that justice be more nearly effectuated. See *State v. Ware*, 205 N.W.2d 700 (Iowa 1973).

To support her claim for a mistrial, Archbold relies on *Sandomierski v. Fixemer*, 163 Neb. 716, 81 N.W.2d 142 (1957). *Sandomierski* involved misconduct by counsel during closing argument and, generally, stands for the proposition that a motion for mistrial is timely if made at the first reasonable opportunity. See *Motis v. Manning*, 200 Neb. 593, 264 N.W.2d 844 (1978).

The question before us does not relate to a mistrial on account of improper argument by counsel. Rather, the question before us concerns availability of a mistrial during adduction of evidence. To resolve Archbold's claim for a mistrial, the adduction of evidence, objection to evidence, and a motion to strike testimony must be placed in perspective.

"A defendant cannot predicate error on the admission of evidence to which no objection was made at the time the evidence was adduced." *State v. Tomrdle*, 214 Neb. 580, 586, 335 N.W.2d 279, 283 (1983).

A litigant may not speculate about the answer to a question and then, after answer has been given, for the first time lodge his objection. See *State v. Smith*, 248 Iowa 603, 81 N.W.2d 657 (1957). If a party does not make a timely objection to evidence, the party waives the right on appeal to assert prejudicial error. See, *State v. Hogan*, 194 Neb. 207, 231 N.W.2d 135 (1975); *McAllister v. State*, 74 Wis. 2d 246, 246 N.W.2d 511 (1976). Failure to make a timely objection or motion to strike will ordinarily bar a party from later claiming error in the admission of testimony. See *State v. Shimon*, 182 N.W.2d 113 (Iowa 1970).

In order to be timely an objection must ordinarily be made at the earliest opportunity after the ground for the objection becomes apparent. A motion to strike is not timely where testimony has been adduced without objection and the grounds for the motion to strike should have been apparent before the motion to strike is made. See *State v. Goff*, 182 N.W.2d 921 (Iowa 1971).

A motion to strike evidence to which there should have been an objection when offered is merely another term for an objection and is governed by the rules pertaining to a timely objection. See *State v. Bruno*, 204 N.W.2d 879 (Iowa 1973). If an objection or motion to strike is made and the jury is admonished to disregard the objectionable or stricken testimony, ordinarily error cannot be predicated on the allegedly tainted evidence and a mistrial should not be granted. See, *State v. Kirby*, 185 Neb. 240, 175 N.W.2d 87 (1970); *State v. Lee*, 216 Neb. 63, 341 N.W.2d 600 (1983).

When a party has knowledge during trial of irregularity or misconduct, he must timely assert his right to a mistrial. See, *Breiner v. Olson*, 195 Neb. 120, 237 N.W.2d 118 (1975); *State Highway Commission v. Carmel Estates, Inc.*, 15 Or. App. 41, 514 P.2d 1124 (1973); *State v. Cornelius*, 293 N.W.2d 267 (Iowa 1980); cf. *Motis v. Manning, supra.*

[W]hen there occurs in the course of trial a highly prejudicial event which is likely to materially affect the outcome of the trial, the party aggrieved must raise his objection then and move for mistrial. His failure to do so when he reasonably should have known of the prejudicial occurrence constitutes a waiver of the objection.

*Lemberger v. Koehring Co.*, 63 Wis. 2d 210, 226, 216 N.W.2d 542, 550 (1974). See, *Hoffer v. Burd*, 78 N.D. 278, 49 N.W.2d 282 (1951); *Hayward v. Richardson Const. Co.*, 136 Mont. 241, 347 P.2d 475 (1959).

There was no objection to the prosecutor's inquiry about any prior stabbing by Archbold. In his discussion with the court regarding a mistrial, Archbold's counsel acknowledged his awareness of the possible prejudicial effect when the testimony was given. Yet, there was neither an objection nor a motion to strike, with the request for an appropriate admonition to the jury. In substance, Archbold seeks to use a motion for mistrial as a substitute for a timely objection which should have been made when any offensive line of questioning was commenced and the allegedly prejudicial testimony elicited. In the absence of either a proper objection to the prosecutor's questions about the California incident or a timely motion to strike Archbold's testimony about the stabbing in California, we cannot pass upon the admissibility of the California incident, that is, relevancy under Rule 404 of the Nebraska Evidence Rules, Neb. Rev. Stat. § 27-404 (Reissue 1979). Archbold's failure to object to the testimony adduced is a waiver of any objection to that evidence and precludes appellate review concerning admissibility of the evidence. Under the circumstances the trial court was correct in overruling Archbold's request for a mistrial.

Archbold seeks to excuse or justify tardiness of the motion for mistrial, objection to testimony, and motion to strike by suggesting possible aggravation of what Archbold viewed as an already bad situation

resulting from disclosure of the California incident. The elections whether to object to the prosecutor's questions and whether to move to strike Archbold's testimony when given became matters of counsel's strategy, on which we will not speculate. Problematical prejudice is no justification for delay in making a required, proper objection to questioning and testimony believed to be improper. The reason for such a rule is the necessity that a trial court have the opportunity to correct any mistake in the adduction of testimony, that is, to prevent the testimony or to strike the testimony and give the jury the appropriate admonition to disregard improper evidence. This rule and practice avoids the drastic consequence of a mistrial—the costly discontinuation and nullification of a jury trial, especially problems arising from rearranging court calendars and preserving evidence, as well as availability of witnesses. See, *Apple v. State*, 190 Md. 661, 59 A.2d 509 (1948); *State v. McGee*, 52 Wis. 2d 736, 190 N.W.2d 893 (1971).

We consider another aspect of Archbold's request for a mistrial. Notwithstanding counsel's recognition of the prejudicial effect of testimony about the California incident, Archbold's motion for mistrial was made only after the prosecutor had asked many questions quite unrelated to the line of questioning found offensive by Archbold, that is, some 139 questions later, which consumed 14 pages of the bill of exceptions and 25 minutes of interrogation by the prosecutor. That span afforded ample opportunity for counsel to approach the judge and, out of the jury's presence, move to strike testimony admitted with an excusable absence of objection; for example, where counsel was prevented from making a timely objection. Archbold's motion for a mistrial was not timely, because the motion was not made at the earliest opportunity after the claimed prejudice became apparent. The untimely motion was an ad-

ditional basis for the trial court's proper refusal to grant a mistrial.

Our disposition of Archbold's claim for a mistrial should not be construed that there is no instance where a mistrial can be granted without an antecedent objection or motion to strike. A mistrial may be warranted where unfairness has been injected into a jury trial and so permeates the proceedings that no amount of admonition to the jury can remove the unfairness to a party. Cf., *Motis v. Manning*, 200 Neb. 593, 264 N.W.2d 844 (1978) (reference in plaintiff's case to liability insurance and the defendant moved for mistrial as soon as the plaintiff rested her case); *United States v. King*, 461 F.2d 53 (8th Cir. 1972) (government's attorney, being forewarned that witnesses would invoke the fifth amendment, nevertheless asked whether the witness was with the defendant when the crime occurred, thereby creating an atmosphere of prejudice; held, a precautionary instruction could not sufficiently cure prejudice to the defendant). See, also, *State v. Allen*, 224 N.W.2d 237 (Iowa 1974); *Stoskoff v. Wicklund*, 49 N.D. 708, 193 N.W. 312 (1923). Therefore, a mistrial may be the only recourse on those occasions when admonition to the jury cannot eradicate the unfair prejudice to a party, or, as expressed in *Dunn v. United States*, 307 F.2d 883, 886 (5th Cir. 1962), "Otherwise stated, one 'cannot unring a bell'; 'after the thrust of the saber it is difficult to say forget the wound'; and finally, 'if you throw a skunk into the jury box, you can't instruct the jury not to smell it'."

Finally, Archbold believes her sentence of 5 to 10 years for manslaughter is excessive. None can be oblivious to the fact that a human life has been lost under circumstances which preclude a sentence less than that imposed by the district court. Any sentence of a shorter term would depreciate the gravity of criminal homicide and would spawn disrespect for the criminal justice system. Cf. *State v. Alexander*, 215 Neb. 478, 339 N.W.2d 297 (1983). The sen-

tence imposed is within the statutory limits, and we find no abuse of discretion by the sentencing court. Consequently, we will not disturb the sentence imposed upon Jane M. Archbold. See *State v. Parks*, 212 Neb. 635, 324 N.W.2d 673 (1982).

The judgment of the district court is correct in all respects and is therefore affirmed.

AFFIRMED.