STATE OF NEBRASKA, APPELLEE, V. JOHN P. WELSH, APPELLANT.

440 N.W.2d 225

Filed May 19, 1989.    No. 88-621.

Alan G. Stoler for appellant.

Robert M. Spire, Attorney General, and LeRoy W. Sievers for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The defendant, John P. Welsh, was convicted of driving on a suspended license and was sentenced to imprisonment for 1 year. He has appealed and contends the evidence was insufficient to support the conviction; he did not receive a fair trial; and the trial court erred in admitting impeachment testimony and in not admitting surrebuttal testimony.

The record shows that on November 11, 1987, four Omaha police officers had the defendant's home at 11329 Grant Circle in Omaha, Nebraska, under surveillance. Two of the officers, Kevin Donlan and Diane Thorson, were assigned to the narcotics division. They had obtained a search warrant and intended to search the defendant's residence when he returned from visiting his father in Denver, Colorado, where his father was hospitalized.

Charles Matson and Daniel Clark were uniformed field officers that had been specially assigned to the narcotics division to assist Officers Donlan and Thorson in this operation. All four officers were in plain clothes and driving unmarked cruisers.

Matson and Clark parked their cruiser on a street directly east of the defendant's house so that they had a clear view of the house and garage. It was approximately 473 feet from their cruiser to the entrance to Grant Circle and approximately 735 feet from their cruiser to the defendant's driveway. Matson and Clark were using binoculars to watch the defendant's house.

Donlan and Thorson were in a cruiser parked nearby but in a different location.

Matson and Clark had been instructed to watch for a newer model blue or gray Buick. At about 6:20 p.m. they saw such an automobile turn into Grant Circle and drive into the driveway and garage at the defendant's house. The officers then drove their cruisers to the defendant's residence, where the defendant was apprehended, the search warrant served, and the defendant arrested.

The defendant's license had been suspended for 15 years as a result of his conviction on July 11, 1986, for third offense driving under the influence of alcoholic liquor.

Matson testified that when he first saw the defendant's vehicle, he saw only one person, the driver, in the vehicle. When their cruiser reached the entrance to Grant Circle, he saw a man getting out of the automobile from the driver's side. The garage door was open and the garage was lighted.

Clark testified that he saw "him" get out of the automobile on the driver's side. Donlan testified that he saw the defendant taking items out of the automobile from the driver's side. None of the officers saw anyone, except the defendant in the automobile or the garage, walking near the house or in the vicinity.

The defendant claimed that he had been driven to Omaha by his daughter and that they had stopped at a neighbor's house. He claimed that the neighbor, Mary Riban, had driven the automobile from her house to his house and into his garage. Riban's testimony corroborated that of the defendant. The

evidence was in conflict and presented issues of fact for the jury. However, the evidence of the State was such that, if believed, it was sufficient to support a verdict of guilty beyond a reasonable doubt.

The defendant contends that he did not receive a fair trial, at least in part, because there was reference throughout the trial to narcotics and the fact that the defendant was being investigated because he was suspected of being involved in narcotics.

The trial commenced on April 29, 1988, and evidence was received without objection, on both direct and cross-examination, that the police officers were working on a narcotics investigation. An appellant cannot predicate error on the admission of evidence to which no objection was made at the time the evidence was adduced. *State v. Archbold*, 217 Neb. 345, 350 N.W.2d 500 (1984). Furthermore, it appears to have been a trial tactic of the defendant to allow such evidence to be received. A defendant cannot complain of error which he has invited. *Bohaty v. Briard*, 219 Neb. 42, 361 N.W.2d 502 (1985).

On the second day of the trial, the defendant moved in limine to prevent the State from "alluding to drugs" or "residue" that had been found in the defendant's house. Although this motion was overruled, the record shows no such evidence was offered by the State or received.

After the defendant had rested, the State was allowed to introduce rebuttal evidence including the testimony of Mark Sundermeier, a police officer in the narcotics division, who, apparently, was in charge of the investigation concerning the defendant. Sundermeier was called to the defendant's house by the other officers and arrived just as the search was beginning. At that time he had a conversation with the defendant in which the defendant said that "he knew he was suspended and that he shouldn't drive." Sundermeier further testified that the defendant told Sundermeier that the driving on a suspended license "was the only thing he had done wrong" and that "his daughter lived in Lincoln, Nebraska, and that he dropped her off there [and had] driven the rest of the way home from Lincoln to Omaha."

Since the defendant had not been given the *Miranda* warnings at the time the conversation with Sundermeier took

place, the State could not use the defendant's statements in its case in chief, but the evidence could be used in rebuttal as impeachment. See *Harris v. New York*, 401 U.S. 222, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1970). Before the testimony was received, the trial court held a hearing out of the presence of the jury and determined that the defendant's statements had been made voluntarily. See *Mincey v. Arizona*, 437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978).

The record shows that the prosecuting attorney did not learn of the conversation between the defendant and Sundermeier until after the first day of the trial. The State provided the information to defense counsel on the following day, a Saturday, but defense counsel did not have an opportunity to look at the material until Sunday, the day before the trial resumed. In his opening statement to the jury, defense counsel had said that the defendant would testify. Defense counsel argued that, in effect, the defendant had been trapped and would now have to testify, although defense counsel did not know of the conversation between the defendant and Sundermeier until after the first day of the trial. The trial court offered to adjourn the trial so that defense counsel could complete any further discovery that he felt was necessary. Defense counsel did not ask for a continuance but moved for a mistrial, which motion was overruled. He also moved in limine to prevent the State from using the defendant's admissions as rebuttal evidence, but that motion was overruled also.

The record does not show any prosecutorial misconduct in regard to the Sundermeier report. As soon as the prosecuting attorney discovered that such a report existed, it was immediately made available to defense counsel.

In *State v. Hardin*, 212 Neb. 774, 326 N.W.2d 38 (1982), we held that when the State discovers evidence that it did not know existed, the proper procedure is to make the evidence available to defense counsel and afford the defendant an opportunity to depose the witness and conduct such additional discovery as may be necessary.

In the *Hardin* case, on the second day of trial, the prosecutor learned the name of a third party who was present at a conversation in which the defendant threatened to damage the

victim's home. The prosecutor called defense counsel with this information and stated that he would call the witness. Defense counsel moved for a mistrial, claiming prejudice because during opening statements defense counsel had stated that the defendant would testify on his own behalf. Although the witness was not called, a continuance had been granted to allow defense counsel to take depositions. This court found that was all the relief to which the defendant was entitled.

In this case, the defendant was given an opportunity to depose Sundermeier, but declined to do so. That was the relief to which the defendant was entitled in regard to the admission of the Sundermeier testimony.

In *State v. Surber*, 221 Neb. 714, 380 N.W.2d 293 (1986), we held that the trial court has broad discretion in regard to discovery orders and the failure to comply with discovery requests.

After the State had presented its rebuttal evidence, the defendant requested leave to offer surrebuttal testimony. Upon inquiry by the trial court, defense counsel stated that the defendant wanted to deny that he had made the statements to which Sundermeier had testified. The request was refused because the defendant had already testified in his case in chief that he had not made such statements.

The refusal by the trial court to permit the introduction of cumulative evidence is not error and does not entitle a defendant to a new trial, absent a showing of an abuse of discretion. *State v. Lee*, 216 Neb. 63, 341 N.W.2d 600 (1983). If Welsh had been allowed to testify in surrebuttal, he would have denied driving and the conversation with Sundermeier. The record already contained those denials. His testimony would have been merely cumulative. It was not an abuse of discretion to refuse to allow Welsh to testify in surrebuttal.

There being no error, the judgment is affirmed.

AFFIRMED.

WHITE, J., dissenting.

I can imagine nothing more devastating to the effectiveness of counsel in a criminal case than the discovery of a surprise impeaching witness after the announcement in an opening statement that the defendant would testify.

To eliminate the "game theory" of trials, both civil and criminal, the discovery process has taken root in our trial practice.

In a civil case a continuance might very well cure the use of the previously undisclosed evidence. In a criminal case, bearing as it does in this case on the sixth amendment right to effective counsel, the evidence should not have been admitted, or having admitted the evidence, the court should have granted a mistrial.

CAPORALE and GRANT, JJ., join in this dissent.