STATE OF NEBRASKA, APPELLEE, V. JOHN G. GIESSINGER, APPELLANT.

454 N.W.2d 289

Filed April 20, 1990.    No. 89-832.

Casey J. Quinn and Bonnie Harty for appellant.

Robert M. Spire, Attorney General, and Linda L. Willard for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Defendant-appellant, John G. Giessinger, challenges the district court's affirmance of the county court's judgment adjudicating him guilty of driving a motor vehicle while his driver's license had been suspended, in violation of Neb. Rev. Stat. §§ 60-430.01 and 60-557 (Reissue 1988). Giessinger's five assignments of error consolidate into assertions that the district court failed to find error on the record by virtue of the county court's purportedly erroneous overruling of his motion to suppress evidence obtained through an allegedly unlawful investigatory stop. We affirm.

On November 12, 1988, the Nebraska Game and Parks Commission and the Nebraska State Patrol were jointly conducting a transitory roadblock operation in Otoe County, Nebraska, at the intersection of Highways 128 and 50. The commission officers were checking for game and fish permit violations, while the state troopers were inspecting operators' licenses, vehicle registrations, proofs of insurance, and vehicle equipment.

Participating in the roadblock was a commission conservation officer having statewide authority to enforce traffic laws as well as game, fish, and park regulations. At approximately 1:55 p.m., the conservation officer observed a brown Chevrolet pickup truck approaching the intersection at which the roadblock was located. The conservation officer noticed that when the pickup was approximately 200 to 250 yards from the roadblock, it slowed down, pulled off onto the shoulder of the highway, and stopped. The conservation officer shouted to one of the troopers that there was a vehicle pulling off the road. Through his binoculars, the conservation officer saw Giessinger stop the pickup and then saw Giessinger and the passenger of the vehicle switch places. When the conservation officer saw the two switch places, he decided to stop the pickup. He testified that although he had no evidence of any criminal activity, he believed that Giessinger's actions in pulling over and switching places with the passenger just before reaching the roadblock were suspicious.

When the pickup reached the roadblocked intersection, the conservation officer approached the driver's side of the vehicle

and asked the driver for his operator's license. The trooper approached the passenger side of the vehicle where Giessinger was sitting, asked Giessinger for his operator's license, and learned that Giessinger's motor vehicle operator's license had been suspended.

Pursuant to Neb. Rev. Stat. § 29-822 (Reissue 1989), Giessinger moved in county court to suppress the evidence which was obtained pursuant to the stop and subsequent search, which in his motion he claims were "accomplished by law enforcement personnel by virtue of an unreasonable roadblock . . . ." The county court overruled Giessinger's motion on the basis that the investigatory stop was unrelated to the roadblock because the conservation officer had a particularized and objective basis for suspecting Giessinger of criminal activity and thus for stopping the vehicle.

Prior to the suppression hearing, the county court judge told defense counsel that the judge's usual practice was to handle the motion to suppress and the trial "collectively, at the same time, and [hear] evidence on the motion and also [receive] it as evidence at the trial at the same time," and asked defense counsel if he had "[a]ny problem with handling it that way." Defense counsel informed the judge that Giessinger might testify at the suppression hearing but not at trial, and the judge decided to consider the motion to suppress before proceeding with the trial.

In this regard we call attention to our recent holding in *State v. Harms*, 233 Neb. 882, 449 N.W.2d 1 (1989), that the intention embodied in § 29-822 is that unless a motion to suppress falls within one of the statutorily specified exceptions, which do not apply in this case, such a motion is to be ruled on and finally determined before trial.

Perhaps as a result of the county court judge's suggestion that they implement the practice of combining the suppression hearing and the trial for purposes of receiving evidence, Giessinger failed to make a timely objection to the admission of the claimed objectionable evidence at the "trial" phase of the proceedings. He instead renewed his motion to suppress at the close of the State's evidence at trial and at the close of all the evidence at trial. However, even if we treat Giessinger's renewed

motions to suppress as motions to strike any testimony given at trial concerning the allegedly illegally obtained evidence, such motions to strike were not timely made. A motion to strike evidence to which there should have been an objection when the evidence was offered is merely another term for an objection and is governed by the rules pertaining to a timely objection. *State v. Archbold*, 217 Neb. 345, 350 N.W.2d 500 (1984). An objection to the admission of evidence is not timely unless it is made at the earliest opportunity after the ground for the objection becomes apparent. *Id.* Accordingly, a motion to strike is not timely where testimony has been adduced without objection and where the grounds for the motion should have been apparent at the time of the testimony. *Id.* See, also, *State v. Welsh*, 232 Neb. 219, 440 N.W.2d 225 (1989) (error cannot be predicated upon the admission of evidence to which no objection was made at the time the evidence was adduced).

Despite the fact that Giessinger failed to object at trial, because of the confusion introduced into the proceedings by the county court judge's suggestion that the suppression hearing and the trial be combined, we will consider the merit of Giessinger's claim that his motion to suppress should have been sustained.

We begin by noting that Giessinger possesses the necessary standing to question the seizure of the automobile, for while the record does not disclose the identity of the owner of the subject motor vehicle, it does disclose that Giessinger was an occupant thereof. As we recently held in *State v. Harms, supra*, an occupant of a vehicle ordinarily has a legitimate expectation to be free of unreasonable governmental intrusion so as to give him or her standing to challenge the stop as violative of the occupant's fourth amendment rights.

Giessinger argues that he was stopped pursuant to the roadblock, that the roadblock was conducted unlawfully in violation of the fourth amendment to the U.S. Constitution, and that the evidence gathered as a result of his being stopped at the roadblock should have been suppressed. He is in error.

It is true that automobile drivers are not shorn of their 4th and 14th amendment protections when they leave their homes and enter their automobiles. *Delaware v. Prouse*, 440 U.S. 648,

99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979). However, an investigative stop of a vehicle is justified where a law enforcement officer has a reasonable suspicion founded upon articulable facts which indicate that a crime has been committed or is being committed by occupants of the vehicle. *Id.*; *State v. Rein*, 234 Neb. 917, 453 N.W.2d 114 (1990); *State v. Carter*, 232 Neb. 666, 441 N.W.2d 640 (1989). In determining whether facts known to a law enforcement officer at the time of the investigatory stop provided a reasonable basis for the stop, we must consider the totality of the circumstances, including all of the objective observations and considerations, as well as the suspicions, drawn by a trained and experienced law enforcement officer by inference and deduction that the individual stopped is, has been, or is about to be engaged in criminal behavior. The officer must have a particularized and objective basis for suspecting the person stopped of criminal activity. *State v. Carter, supra.* A finding of a reasonable suspicion must be determined on a case-by-case basis.

A situation similar to that before us was considered in *Snyder v. State*, 538 N.E.2d 961 (Ind. App. 1989), where the police were conducting a "sobriety roadblock." When approximately 100 yards away, Snyder turned around in the road to avoid the roadblock. A state trooper left the roadblock and stopped Snyder. Prior to the stop, Snyder had committed no traffic violations, nor was he driving erratically. The trooper testified that the sole reason he stopped Snyder was that Snyder was apparently trying to avoid the roadblock. Rejecting Snyder's contention that he was seized pursuant to the roadblock, the court held that although

> a driver approaching a roadblock is not "seized" until actually reaching the roadblock, a driver's attempt to avoid the roadblock, by making a turn around, does raise a "specific and articulable fact" which gives rise to a reasonable suspicion on the part of a police officer that the driver may be committing a crime. Such a suspicion entitles the officer to detain the driver of the vehicle . . . .

*Id.* at 965.

In another similar case, *Coffman v. State*, 26 Ark. App. 45, 759 S.W.2d 573 (1988), Coffman, who had been convicted for

driving while under the influence of alcohol, challenged the validity of a police roadblock and argued that evidence should have been suppressed because the officers lacked probable cause to stop him. Coffman was stopped because, as he approached the roadblock, he pulled into a driveway, backed out onto the highway, and headed in the opposite direction. The officer who stopped Coffman testified that before stopping him, he did not observe Coffman driving erratically or suspect Coffman of any criminal activity. The court rejected Coffman's claim that the alleged unlawful roadblock made his arrest unlawful under the fruit of the poisonous tree doctrine, and held:

> [W]e do not agree with appellant's contention that the stop of his vehicle was unconstitutional or unlawful. We agree with the appellee that the question is whether the record will support a finding that the police officer could have "possessed the requisite reasonable suspicion necessary to effectuate a constitutionally permissible investigatory stop." We find that the record will support such a finding. There is evidence from which it could be found that the appellant was approaching a roadblock made clearly visible by the presence of police vehicles with flashing blue lights; that the appellant attempted to avoid the roadblock; and that the trained police officers who were conducting the roadblock could reasonably suspect that one who attempted to avoid this roadblock was trying to hide some type of unlawful activity.

*Id*. at 48-49, 759 S.W.2d at 575. See, also, *Tims v. State*, 26 Ark. App. 102, 760 S.W.2d 78 (1988), *modified on other grounds* 26 Ark. App. 106-A, 770 S.W.2d 211 (1989) (act of defendant in driving through a police roadblock gave officers a reasonable suspicion to detain him); *City of Las Cruces v. Betancourt*, 105 N.M. 655, 735 P.2d 1161 (1987) (defendant's actions in proceeding through police roadblock at high rate of speed provided officers with articulable facts upon which to stop the defendant, regardless of constitutionality of initial stop at roadblock); *Green v. State*, 530 So. 2d 480 (Fla. App. 1988), *rev. denied* 539 So. 2d 475 (Fla. 1989) (even though police roadblock was illegal, officer's stop of defendant prompted by

defendant's failure to follow directions of officer to stop at roadblock was valid); *Smith v. State*, 515 So. 2d 149 (Ala. Crim. App. 1987) (initial investigatory stop of defendant's vehicle was justified by state trooper's observation of defendant's vehicle coming around the curve in sight of the police roadblock, turning rapidly into driveway approximately 200 yards from roadblock, stopping some 50 feet from the house, and turning the lights off but not the engine); *Boches v. State*, 506 So. 2d 254 (Miss. 1987) (initial stop of defendant's vehicle after he turned vehicle away from police roadblock and headed in opposite direction was justified); *Stanley v. State*, 191 Ga. App. 603, 382 S.E.2d 686 (1989) (fact that defendant, who was driving toward police roadblock, stopped and backed approximately six to eight car lengths away from the roadblock was sufficient to give rise to a reasonable suspicion that defendant was or was about to be engaged in criminal activity).

But see, *Murphy v. Commonwealth*, 9 Va. App. 139, 384 S.E.2d 125 (1989) (act of driver in making a lawful right turn onto an existing roadway 350 feet before police roadblock does not give rise to reasonable suspicion of criminal activity unless the driver's turn or action is coupled with other articulable facts, such as erratic driving, a traffic violation, or some behavior which independently raises suspicion of criminal activity); *Pooler v. MVD*, 306 Or. 47, 755 P.2d 701 (1988) (State concedes that act of motorist in making legal U-turn before reaching police roadblock does not in itself constitute cause for a reasonable suspicion).

While there may be nothing suspicious in making a lawful right turn onto an existing roadway or in making a lawful U-turn before reaching a roadblock, we are persuaded that the conservation officer's observation of Giessinger's actions in driving the pickup onto the shoulder of the highway and switching places with the passenger prior to approaching the roadblock was sufficient to provide the officer with the reasonable suspicion necessary to justify the investigatory stop. That is to say, Giessinger's actions provided a basis independent of the roadblock which justified his stop.

Thus, we do not reach the question whether the roadblock was lawful, for while Giessinger has standing to challenge the

seizure of the vehicle in which he was riding, he does not have standing to challenge the seizure of other vehicles pursuant to the roadblock.

AFFIRMED.