STATE OF NEBRASKA, APPELLEE, V. LARRY CRAIG CARTER, APPELLANT.
441 N.W.2d 640

Filed June 23, 1989.    No. 88-960.

Kristi J. Egger, Deputy Hall County Public Defender, for appellant.

Robert M. Spire, Attorney General, and Terri M. Weeks for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

The defendant, Larry Craig Carter, was convicted of operating a motor vehicle while his operator's license was suspended and was fined $50 plus costs and placed on probation for 90 days. Upon appeal to the district court the judgment was affirmed.

The defendant has appealed and contends that the trial court erred in failing to suppress evidence obtained as a result of the investigatory stop made at the time of his arrest.

The record shows that the defendant's license had been suspended as a result of his failure to comply with a citation for speeding issued January 13, 1987.

At about 12:15 a.m. on March 11, 1988, Ronald Ochsner, a sergeant for the Hall County sheriff's office, was on patrol in the Grand Island airport area. Sergeant Ochsner has 21 years of experience in law enforcement. The airport is located in a rural area approximately 4 miles from Grand Island.

Ochsner testified at the suppression hearing that the airport area is one of the major problem areas in the county because of the activities in the area and the number of burglaries that have occurred there. The sheriff's office focuses a lot of attention on the area and, if possible, tries to check the area three times each

night.

While Ochsner was checking the northern part of the airport area where a number of office buildings, storage buildings, and businesses are located, he saw a vehicle leave the Stahla office area. No businesses were open in that part of the airport area at that time, and "there's just no traffic there at all at nights." Any traffic is further to the south where the Pony Express and G.P. Mechanics shops are located, which are open at night. Ochsner said he did not see "where the vehicle came out of" and decided to stop the vehicle "due to the amount of burglaries in the area."

The vehicle pulled out from a side road by the Stahla offices, turned east on the access road, stopped at a stop sign at Airport Avenue, and turned south. Ochsner stopped the vehicle 300 or 400 feet south of where the stop sign was located. When Ochsner got behind the vehicle, he noticed that it had out-of-county license plates.

After the vehicle had been stopped, Ochsner discovered that the defendant was the driver. A records check disclosed that the defendant's license had been suspended and that he had failed to appear on the prior speeding charge.

No burglaries had been reported in the area that night, and the last prior burglary had occurred probably 2 months before.

The test of whether an investigative stop is justified is whether the police officer has a reasonable suspicion founded upon articulable facts which indicate that criminal activity has occurred or is occurring and that the suspect may be involved. *State v. Ebberson*, 209 Neb. 41, 305 N.W.2d 904 (1981).

In *State v. Thomte*, 226 Neb. 659, 663, 413 N.W.2d 916, 919 (1987), we said:

> "Police officers must have a particularized and objective basis for suspecting the person stopped of criminal activity. The assessment of the totality of circumstances includes all of the objective observations and considerations, as well as the suspicion drawn by a trained and experienced police officer by inference and deduction that the individual stopped is or has been or is about to be engaged in criminal behavior. See, *Brown v. Texas*, 443 U.S. 47, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979); *Delaware v. Prouse*, 440 U.S. 648, 99 S. Ct. 1391, 59 L.

Ed. 2d 660 (1979)."

Quoting *State v. Ebberson, supra.*

A motorist has a reasonable expectation of privacy which is not subject to arbitrary invasions solely at the unfettered discretion of police officers in the field. *State v. Crom,* 222 Neb. 273, 383 N.W.2d 461 (1986).

In this case, the defendant's automobile was stopped only because the sheriff's officer wanted to know what the vehicle was doing in the area. There was no particularized and objective basis for suspecting the defendant of criminal activity sufficient to justify an investigatory stop. The motion to suppress should have been sustained, and the judgment must be reversed.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

BOSLAUGH, J., dissenting.

The facts in this case are nearly identical to the facts in *State v. Kavanaugh,* 230 Neb. 889, 434 N.W.2d 36 (1989).

After midnight, the defendant was stopped when he was observed leaving a rural area where a number of businesses were located, all of which were closed, and where a number of burglaries had occurred.

As the New Jersey court said in *State v. Davis,* 104 N.J. 490, 504, 517 A.2d 859, 866-67 (1986), the police would be derelict in their duties if they did not investigate circumstances which to an experienced police officer indicate that " 'something amiss might be taking place or is about to take place.' . . ."

HASTINGS, C.J., joins in this dissent.